**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO R. AYALA and MIRNA AYALA, individually and as Administrators of the Estate of Julio A. Ayala, | No. C 06-02061 WHA |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT; AND VACATING HEARING** |
| v. | |
| CITY OF SOUTH SAN FRANCISCO, SOUTH SAN FRANCISCO POLICE DEPARTMENT, CHIEF MARK RAFFAELLI, OFFICER MIKE KUCHAC, OFFICER JANELLE PEREZ, CORPORAL BRUCE McPHILLIPS, OFFICER DAVID BERRY, CORPORAL DANNY GIL, OFFICER MELINDA LOPEZ, CORPORAL KEN CHETCUTI, SERGEANT RON CARLINO, CORPORAL DAVE KENNAN, OFFICER CHRIS DEVAN, OFFICER MATT McNICHOL, OFFICER ADAM PLANK, OFFICER ROBBY CHON, and DOES 1 to 50, inclusive, | |
| Defendants. | |

**INTRODUCTION**

In this civil-rights action against the City of South San Francisco and numerous officers in its police department, the parents of Julio A. Ayala seek relief for violations stemming from the alleged beating death of their son. Defendants now move to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6) and move for a more definite statement Federal Civil

1  Procedure 12(e).  While some of plaintiffs' claims are improperly framed, plaintiffs may go
2  forward on their claims to vindicate the Fourth Amendment rights of their son, on their claims
3  to vindicate their own rights under the Fourteenth Amendment, and on their common-law tort
4  claims.  Plaintiffs need not add any further detail to their complaint to go forward on these
5  claims.  Accordingly, defendants' motion to dismiss is granted in part and denied in part, and
6  their motion for a more definite statement is denied.

## STATEMENT

The following facts are drawn from plaintiffs' complaint and are viewed in the light most favorable to plaintiffs for purposes of these motions.

Plaintiffs Julio R. Ayala and Mirna Ayala were the parents of decedent Julio A. Ayala and the administrator of their son's estate.  On April 3, 2005, the younger Ayala was in a hotel room he had rented in the City of South San Francisco, California.  Plaintiffs alleged that a group of officers from the South San Francisco Police Department entered the hotel room without probable cause or exigent circumstances, according to the complaint.  These officers included defendants Mike Kuchac, Janelle Perez, Bruce McPhillips, David Berry, Danny Gil, Melinda Lopez, Ken Chetcuti, Ron Carlino, Dave Kennan, Chris Devan, Matt McNichol, Adam Plank, and Robby Chon.[1]

After entering the hotel room, these officers purportedly subjected Julio A. Ayala to "unnecessary blows, kicks, bending of his legs, arching of his body, the application of full body weight by the officer-defendants on his back, legs, ankles and body, and other acts of violence while decedent lay helplessly handcuffed on his stomach gasping for air" (Compl. ¶ 18). Decedent was then allegedly placed in a choke hold by Officer Keenan and Sergeant Carlino. This choke hold purportedly caused injuries to decedent's neck, larynx, and thyroid.  Decedent

---

[1] The other defendants include the City of South San Francisco, the South San Francisco Police Department and the Chief of the South San Francisco Police Department, Mark Raffaelli.  Defendants argue that the South San Francisco Police Department is not properly a separate defendant from the city, a point that plaintiffs apparently concede.  This order thus treats plaintiffs as having named only the City of South San Francisco, not its police department.

2

1   Ayala was then placed in a body wrap.² Plaintiffs further alleged that none of the officer
2   defendants rendered medical aid or summoned medical assistance in a timely fashion. Julio A.
3   Ayala was declared dead by paramedics in the hotel room.

4   Decedent's parents commenced this action on March 6, 2006. In their complaint, the Ayalas listed three federal claims under 42 U.S.C. 1983. *First*, plaintiffs claimed that the officer defendants violated decedent's Fourth Amendment rights by using excessive force, and violated the parents' Fourteenth Amendment rights "to be free from unwarranted state interference in their familial relationship with JULIO A. AYALA" (Compl. ¶¶ 27–28). *Second*, plaintiffs claimed that the City of South San Francisco violated the Fourth and Fourteenth Amendment rights of decedent and of "Latinos, African-Americans and members of other minority groups" by engaging in a practice of using excessive force (*id.* at ¶ 35). *Third*, plaintiffs claimed that the city, Chief of Police Raffaelli, and Sergeant Carlino were liable for violations of decedent's and other minorities' Fourth and Fourteenth Amendment rights on a theory that these defendants failed to adequately supervise the city's officers. Despite the fact these latter two claims refer to the rights minorities generally, plaintiffs' complaint contains no class-action allegations and these allegations do not purport to render this a representative action.

In addition, plaintiffs listed four state-law claims in their complaint. They claimed that all defendants were liable for wrongful death, a survival action, and negligence. Finally, they claimed the city and Chief of Police Raffaelli were liable under a theory of negligent hiring, supervision, and retention. Plaintiffs requested damages including punitive damages as to the individual defendants.³

**ANALYSIS**

---

² A "body wrap" is a police tool apparently consisting of a shoulder harness, a binding for the ankles, and a blanket with straps that encircles and restrains the legs. The harness and the ankle strap attach to loops on the blanket with carabiners, which helps to keep captives from moving.

³ Defendants initially moved to strike plaintiffs' request for punitive damages but dropped this request on reply after recognizing that punitive damages may be appropriate against individual officers.

3

Defendants raise four arguments in support of dismissal under FRCP 12(b)(6). *First*, defendants argue that plaintiff's Fourteenth Amendment claims unrelated to the parents rights to be free from familial interference must be dismissed, as they are controlled by the more specific Fourth Amendment principles.[4] *Second*, defendants argue that plaintiffs lack standing to assert injuries on behalf of various minority groups. *Third*, defendants contend that plaintiffs failed to adequately plead a claim for supervisory liability under Section 1983. *Fourth*, defendants argue that plaintiffs' state-law claims against the city failed to satisfy the higher pleadings standards imposed by the California Torts Claims Act, California Government Code § 810 *et. seq*. Defendants also move for a more definite statement under FRCP 12(e).

### 1. MOTION TO DISMISS.

A motion to dismiss under FRCP 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint. A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). On the other hand, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

#### A. Applicable Amendment to Claims of Excessive Force.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "*[A]ll* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original).

---

[4] Defendants initially argued that plaintiffs improperly pled their claim for familial rights under the Fourteenth Amendment, but dropped that argument on reply.

4

This rule is controlling here. Plaintiffs' Section 1983 claims for excessive force under the Fourteenth Amendment must be dismissed. Going forward, plaintiffs claims of excessive force must be analyzed exclusively under the Fourth Amendment.

### B.  Group Injuries.

Defendants argue that plaintiffs lack standing to assert claims on behalf of various minority groups that were purportedly impacted by the South San Francisco Police Department's use of excessive force against these groups. Defendants note that in the context of a civil-rights action, a plaintiff cannot ordinarily seek to assert the rights of third parties. *Tileston v. Ullman*, 318 U.S. 44, 46 (1943). Defendants misconstrue the nature of plaintiffs' complaint.

Plaintiffs have not made any class-action allegations. Nor is their complaint framed as representative of all minorities' rights. The only suggestion of a representative action is the allegation that the city and its police department "use violence against individuals being detained, specifically Latinos, African-Americans and members of other minority groups" (Compl. ¶ 35). These allegations simply appear to provide support for plaintiffs' claims that there was a pattern and practice of abuse by the South San Francisco Police Department. Evidence of a pattern of excessive force by the police department, particularly exacted against racial minorities, will be pertinent to plaintiffs' Section 1983 claims. Allegations of a pattern and practice are the very type of allegations required to impose municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Of course, trustees' claims may go forward to the extent they are seeking to vindicate the individual rights of a decedent, as they are here. *See, e.g.*, *Estate of Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir. 2001).

### C.  Supervisory Liability.

Defendants also argue that plaintiffs' supervisory-liability claim against the city, Chief Raffaelli, and Sergeant Carlino must be dismissed because plaintiff failed to make sufficient allegations of inadequate training. This argument lacks merit.

5

It is well-established that "a city can be liable under § 1983 for inadequate training of its employees." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Hudson v. Michigan*, 126 S. Ct. 2159, 2168 (June 15, 2006) ("modern police forces are staffed with professionals; it is not credible to assert that internal discipline, which can limit successful careers, will not have a deterrent effect"). Likewise, "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his 'own culpable action or inaction in the training, supervision, or control of his subordinates.'" *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citation omitted).

At this point, plaintiffs need only have pleaded their *Canton* claim by "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). They have done so. They have made allegations of purportedly reprehensible actions by a group of officers in the South San Francisco Police Department. They have alleged that the city, Chief Raffaelli, and Sergeant Carlino were responsible for training and supervising these officers and that they failed to do so. These allegations are sufficient to survive dismissal at this juncture.

### D. State-Law Claims.

Finally, defendants argue that the plaintiff's state-law claims, as alleged against the city, must be dismissed because they were not pled with the requisite particularity under the California Tort Claims Act. This order finds defendants' argument untenable.

The scope of municipal liability for common-law torts under California laws is controlled by two code sections. *First*, California Government Code § 815.2(a) provides:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

*Second*, California Government Code § 820(a) provides that "[e]xcept as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person." Accordingly, the California Court of Appeal has explained that this statutory framework establishes two principles:

6

> (1) unless they are granted specific statutory immunity, a public entity and its employees are liable in tort for the same causes of action that could be brought against a private person; and (2) absent a statute specifically imposing liability, a public entity and its employees are not liable for causes of action in tort that could not be pursued against a private party.

*Lueter v. California*, 94 Cal. App. 4th 1285, 1300 (2002).

Defendants argue that under California law, a heightened pleading standard applies to claims against a municipality for liability resulting from the conduct of its employees. Under California law "[e]very fact essential to the existence of statutory liability must be pleaded." *Susman v. City of Los Angeles*, 269 Cal. App. 2d 803, 809 (1969). Furthermore, "the plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity." *Keyes v. Santa Clara Valley Water District*, 128 Cal. App. 3d 882, 886 (1982).

This heightened pleading standard, however, is inapplicable to claims brought in federal court. "The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure *regardless of the source of substantive law to be applied in the particular action*." WRIGHT AND MILLER, *Federal Practice and Procedure*, § 1203 (3d ed. 2004) (emphasis added). Accordingly, plaintiffs here only needed to plead their state-law claims against the city with "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by FRCP 8(a). *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965).

Plaintiffs have sufficiently alleged that the individual officers acted in a potentially tortious manner, and have likewise sufficiently alleged that the city was responsible for these officers but potentially failed to train the officers properly. Plaintiffs' allegations are sufficient at this juncture.

### 2. MOTION FOR MORE DEFINITE STATEMENT.

Under FRCP 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that party cannot reasonably be required to frame a responsive pleading the party may move for a more definite statement before interposing a responsive pleading." This rule must be read in light of FRCP 8(a). Given the limited pleading requirements under that rule, it has been noted that "[m]otions for a more definite statement are viewed with disfavor,

7

and are rarely granted." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).

Plaintiffs have sufficiently put defendants on notice as to the incident and individuals involved in this action. Plaintiffs have also sufficiently identified the claims against which the city and its officers will have to mount a defense. At this juncture, nothing more is required.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion for a more definite statement is **DENIED**. Finding no further argument necessary, the hearing on this motion is hereby **VACATED**.

As the Court stated at the case management conference, this action will go to trial on September 17, 2007, unless summary judgment intervenes. The Court is concerned that counsel are preoccupied with motion practice and are not diligently pursuing discovery. Note well again that trial continuances are rarely granted by the Court. Counsel should be working on discovery at least as hard as they have been working on motion practice.

**IT IS SO ORDERED.**

Dated: August 28, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8